39 F.3d 1181
 74 A.F.T.R.2d 94-6873
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edwin F. ELMS, Plaintiff-Appellee,
v.
UNITED STATES of America INTERNAL REVENUE SERVICE,
Counterclaim Plaintiff Defendant-Appellant,
v.
Michael W. Cygan, Counterclaim Defendant-Appellee.
 No. 93-2038.
 United States Court of Appeals, Sixth Circuit.
 Oct. 26, 1994.
 
 Before KEITH, NELSON, and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal by the Internal Revenue Service from a judgment in favor of a corporate officer against whom the IRS had brought a claim for recovery of withholding taxes allegedly due from the corporation at the time it went bankrupt. The corporation had deposited sufficient funds to cover the taxes in full, but had made a clerical error in specifying the particular quarter to which one of its payments was to be applied. This resulted in an apparent overpayment for one period and an apparent underpayment for the next. The IRS chose to use part of the "overpayment" to satisfy a late-payment penalty instead of applying it to the withholding tax liability for the next period. We conclude that the full amount deposited ought to have been applied to the withholding tax liability, the corporation having designated each deposit as a withholding tax payment, and we shall affirm the district court's judgment on that basis.
 
 I.
 
 2
 The appellee, Michael W. Cygan, was vice-president, chief financial officer, and controller of a company known as Dynaplast Corporation. Dynaplast failed to make timely deposits of federal payroll withholding taxes during the third quarter of 1988. Dynaplast nonetheless made a withholding tax deposit of $34,172.90 in October of 1988, intending that it be applied to the fourth quarter.
 
 
 3
 A federal tax deposit Form 8109 accompanied the October check. Form 8109 contains two sets of computer-scannable ovals that an employer may darken to designate, first, the type of tax, and, second, the quarterly tax period to which the deposit should be applied. Dynaplast's Form 8109 designated the check as a deposit for payroll taxes, but erroneously specified that the deposit was for the third quarter. The IRS applied the check to Dynaplast's third quarter payroll tax liabilities, which left nothing for the fourth quarter obligation that Dynaplast thought it was paying.
 
 
 4
 During the month of November, 1988, Dynaplast made three federal tax deposits to cover its liabilities for the third quarter. Each deposit was accompanied by a Form 8109 with the ovals darkened in the same pattern as on the form that accompanied the deposit made in October.
 
 
 5
 On December 12, 1988, the IRS computed the taxes due for the third quarter and concluded that Dynaplast had paid $35,198.46 more than was due for that period. On the same day, the IRS assessed a penalty of $29,862.79 against Dynaplast for failure to make its third quarter deposits in a timely manner. The Service offset part of the third quarter excess against the penalty and refunded the rest to Dynaplast. Because Dynaplast's records showed no third quarter overpayment, the company's bookkeeping section believed that the refund was a mistake and returned it to the IRS. It is not known what the IRS did with the money.
 
 
 6
 Dynaplast filed for bankruptcy in May of 1989. The IRS subsequently determined that Dynaplast had not paid all the withholding taxes it owed for the fourth quarter of 1988. Because these taxes could not be collected from the corporation, the IRS made assessments totalling $26,745.77 against Mr. Cygan and Dynaplast's president, Edwin F. Elms.
 
 
 7
 Mr. Elms paid part of his assessment and then brought a refund action in the district court. The IRS filed a counterclaim against Mr. Elms for the balance of the assessment and cross-claimed against Mr. Cygan to recover the assessment against him. Elms subsequently settled, but Cygan did not.
 
 
 8
 On Wednesday, March 31, 1993, the district court entered summary judgment in favor of Mr. Cygan. The government served a motion to alter the judgment under Fed.R.Civ.P. 59(e) on Wednesday, April 14, but the motion was not actually filed until April 19. The district court denied the motion on June 2, and this appeal followed.[1]
 
 
 9
 Under Sec. 6402 of the Internal Revenue Code, the IRS may apply undesignated excess payments to offset any outstanding tax liability. 26 U.S.C. Sec. 6402(a);[2] Sage v. United States, 908 F.2d 18, 26-27 (5th Cir.1990), Muntwyler v. United States, 703 F.2d 1030, 1032 (7th Cir.1983); United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947). The district court, following the Fifth Circuit's reasoning in First National Bank in Palm Beach v. United States, 591 F.2d 1143, 1148 (5th Cir.1979), found that specific penalty provisions of the Internal Revenue Code--26 U.S.C. Sec. 6665 and Sec. 6671--modify the general offset provisions of Sec. 6402. Both Sec. 6665 and Sec. 6671 require notice and demand for the payment of penalties. Reading Sec. 6402, Sec. 6665, and Sec. 6671 together, the district court found that the IRS may only apply undesignated payments to fully mature liabilities, including penalties for which the IRS has made notice and demand. Consequently, the district court concluded, the IRS could not apply payments received before December 12 to an immature penalty newly assessed on that date; it should have applied the excess payment to Dynaplast's mature fourth quarter payroll tax liabilities, which would have eliminated the corporate tax deficiency in its entirety.
 
 
 10
 We need not decide whether the district court's reasoning was correct, because it is clear that Dynaplast designated all of its payments as payroll taxes. A taxpayer who voluntarily makes payments to the IRS has a right to direct the application of payments to whatever type of liability he chooses. DuCharmes & Co. v. Michigan, 852 F.2d 194, 196 (6th Cir.1988). The IRS is entitled to apply a payment as it sees fit only if the payment is made without designation. Muntwyler, 703 F.2d at 1032.
 
 
 11
 The government argues that because Dynaplast's deposits were designated for the third quarter, any excess with respect to that quarter was undesignated. Mr. Cygan counters that each Form 8109 bore two designations--one for payroll taxes, the other for the third quarter. The payroll tax designation did not disappear, Mr. Cygan suggests, once the third quarter liability had been satisfied; any excess still had to be applied to payroll taxes before other outstanding liabilities.
 
 
 12
 We agree. Form 8109 contains two separate designation columns. The first covers "type of tax," the second "tax period." Only one type of tax, and only one tax period, can be designated on each form. Dynaplast had no other way to designate "payroll taxes to be applied to the third quarter first and then to the fourth quarter."[3] The government's position is one that would effectively deprive Dynaplast of any opportunity to exercise its right to direct that an inadvertent overpayment be applied against existing payroll tax liabilities rather against than a newly assessed penalty.
 
 
 13
 Mr. Cygan's position is buttressed by the fact that Dynaplast's fourth quarter Form 941 tax return, on which the company was required to report its payroll tax liabilities, reflected a designation of the $34,172.90 payment for fourth quarter payroll taxes. "[The] power of designation, while absolute if timely, evaporates upon the expiration of the relevant period for filing a timely return." Hirsch v. United States, 396 F.Supp. 170, 173 (S.D.Ohio 1975). Dynaplast's Form 941 was timely filed on January 31, 1989. The nature of the filing scheme which the government has imposed upon corporate taxpayers means that the fourth quarter Form 941 provided the first opportunity, other than the computer-scannable Form 8109, for Dynaplast to indicate how it had designated the payment in question.
 
 
 14
 The evidence supports the conclusion that no one at Dynaplast had reason to realize that there was any problem with its fourth quarter payroll taxes until 1989, when the opportunity to designate payments had already expired. The government argues that to allow retroactive designation would cause administrative difficulties and decrease the government's ability to maximize its total recovery of taxes through the personal liability of persons responsible for withholding taxes. See Kinnie v. United States, 994 F.2d 279, 287 (6th Cir.1993); DuCharmes & Co., 852 F.2d at 196. But where a Form 941, filed before the expiration of the relevant filing period, necessitates a change or clarification in a designation, it seems to us that any administrative and bookkeeping problems that might result from clarifying the designation to reflect the taxpayer's actual intent would be considerably less time-consuming and costly than years of litigation.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 The district court erroneously ruled that the government's Rule 59(e) motion was untimely because it was filed five days late. Rule 59(e) states that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e) (emphasis added). Case law confirms that the timeliness of a Rule 59(e) motion is determined by the date it is served, not by the date it is filed. Chesson v. Jaquez, 986 F.2d 363, 365 (10th Cir.1993). When a prescribed period of time is less than eleven days, weekends and legal holidays are excluded. Fed.R.Civ.P. 6(a). The government served its motion on April 14, the tenth business day after the March 31 entry of judgment, and filed it on April 19. The filing was made within a reasonable time after service. Fed.R.Civ.P. 5(d); Chesson, 986 F.2d at 365. Consequently, the motion was timely
 
 
 [2]
 26 U.S.C. Sec. 6402 reads in pertinent part:
 (a) General Rule.--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment ... against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall ... refund any balance to such person.
 
 
 [3]
 At oral argument, the government conceded that had Dynaplast darkened the computer-scannable ovals for both "third quarter" and "fourth quarter," the designation would have been treated as a third quarter payment, with the excess deemed undesignated