**In the Matter of Carl D. LEDIN,
Theresa Ledin.**

**Bankruptcy No. 91–10699–8B3.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Div.

Feb. 23, 1995.

Joel S. Treuhaft, for debtor.

Terry E. Smith, Trustee.

David N. Geier, Trial Atty., U.S. Dept. of Justice, Washington, DC.

## ORDER ON OBJECTION TO CLAIM OF THE INTERNAL REVENUE SERVICE

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon Final Evidentiary Hearing on Debtors' Objection to Claim of the United States of America, more specifically the Internal Revenue Service. The Court has considered the Objection, the evidence, together with the record, and finds as follows:

### Facts

Debtors filed a petition under Chapter 13 of Title 11, United States Code on August 13, 1991. Debtors have made an Objection to Claim of the Internal Revenue Service for assessed penalties on the basis of responsible person liability under 26 U.S.C. § 6672 (I.R.C.).

The instant case stems from a somewhat tragic tale. Debtor Husband's long-term success as a auto-body repair specialist was met with demise, beginning as early as 1987, when they began a well thought out expansion of his small proprietorship. For almost two decades, Mr. Ledin built a successful auto-body repair business. He began in Massachusetts, and later relocated his operation to Florida. As the business began to grow in the 1980's, Mr. Ledin decided to expand his present car-port operation to a full-service 10 day business. To meet his objective, Mr. Ledin was encouraged, if not required by financial institutions, to hire a business manager to handle the financial and business end of his operation. It appears from the evidence, Mr. Ledin lacked interest in the financial aspects of the business, and his remarkable ability to sell his services made him a much more valuable asset in the auto-body shop as a craftsman and public relations contact. Unfortunately, Debtors would discover too late, that Mr. Ledin's lack of interest in the financial aspects eventually cost them the business, and caused them to file this Chapter 13 Bankruptcy case.

In late 1986, Debtors sought a controller to assist them in securing credit to finance the construction of their new facility. Their needs were answered, when Jerry A. Trenneborg contacted Mr. Ledin with respect to the controller's position. Trenneborg purported to be a controller by trade, claiming to have worked for Chevel Development Corporation, and Saab of North America, and professing to have a Masters in Business Administration in finance from a New York university. In January 1987, Trenneborg was hired as General Manager. Much to Debtors' chagrin, they never checked Trenneborg's credentials. Trenneborg was for all intents and purposes a charlatan. He apparently never had formal training, and upon his employment with Debtors, he began embezzling funds to furnish support for extra-marital activities and to live a more lavish lifestyle than the agreed $300.00 per week salary he was entitled.

Several months later and upon suspicion, Mrs. Ledin performed a cursory audit and discovered many serious discrepancies. Trenneborg was confronted and dismissed, and Debtors promptly sought criminal prosecution. An audit performed upon investigation of charges against Trenneborg revealed over $100,000 in misappropriation.

Mrs. Ledin became Vice President of the business upon Trenneborg's dismissal. She took over the financial responsibilities of the business, despite her lack of experience or training in financial matters. During Trenneborg's employment, his responsibilities included filing Form 941 (hereinafter quarterly return) and making payments of 941 withholding taxes (trust fund taxes). Mrs. Ledin soon discovered deficiencies in payments of trust fund taxes resulting from Trenneborg's misappropriation, and contact was made to the Internal Revenue Service (Service). Due to the circumstances of the embezzlement, the Service waived all penalties and interest with respect to the three (3) quarters of 1987. From the record it appears Debtors and the Service made an agreement as to the first three quarters of 1987 withholding liabilities. The agreement apparently waived all penalties and interest if Debtors satisfied the obligations directly related to the embezzlement scheme, although it is not clear from the record what the agreement entailed. There is no dispute the trust fund taxes for 1987 have been satisfied, nor is there an assertion

the payments applied to the 1987 tax liability were misapplied from subsequent periods. The payments and filing requirements were substantially complied with for the fourth quarter of 1987.

Debtors began falling behind in their payments of trust fund taxes in the first quarter 1988. Although the record does not clearly set out when Debtors were required to place funds in a separate trust account, it appears the Service may have caused this requirement as a result of the 1987 problems.[1]

From the time Debtors were victimized by embezzlement, they continuously filed late quarterly returns and made late payments. Although Debtors succeeded in satisfying the 1987 liabilities within the 1988 calendar year, which were the result of embezzlement, Debtors never timely paid post 1987 quarterly liabilities. In fact, Debtors' subsequent quarter's taxes would typically be due before the prior quarter's taxes were paid.

As a result of Debtors' continuous problems, the Service sought to correct Debtor's tardiness and entered into an installment agreement on September 13, 1989. In the installment agreement, Debtors agreed to pay $1,000 on the fifth of each month to make up for past deficiencies. One of the requirements of the agreement dictated Debtors to remain current on deposits of withholding tax and timely filing of all quarterly returns. Debtors made six $1,000 installments under the agreement, but did not keep current on the fourth quarter 1989, or first quarter 1990, taxes, and did not comply with deposit requirements.

In April 1990, when it became apparent Debtors were not going to abide by the installment agreement, the Service declared the Debtors' Corporation in default. The Service began levying upon the accounts receivable of Debtors' corporation. Debtors' clients stopped referring business and Debtors were forced to shut-down the operation.

. The Service has made a determination Debtors are "responsible parties" by virtue

of I.R.C. § 6672, and they have assessed Debtors with an 100% penalty on October 8, 1990. The I.R.C. § 6672 liability of Debtors is not at issue, only the amount of the liabilities. There is no doubt from 1988 to 1990 Mrs. Ledin attempted to "catchup" current and past trust fund tax obligations. Notwithstanding, the evidence supports a finding Debtors, subsequent to the embezzlement, were continuously late in making payments, or making weekly deposits, and filing quarterly returns. In addition, payments and deposits were made in a rather haphazardous manner. Below, tax periods are shown for each quarter beginning January 1988 and ending April 1, 1990, when Debtors' business ceased incurring withholding tax liability. Each quarter's activities are summarized as relates to Debtors payments, deposits, and filing quarterly tax returns as follows:

Tax year 1988:

First Quarter: The return which was due April 30, 1988, was filed July 4, 1988. Debtors did not satisfy obligations for first quarter prior to filing the return. Any payments made during this quarter were not designated for a specific quarter, and deposits made during this quarter were insufficient to satisfy this quarter's liability.

Second Quarter: The return which was due July 31, 1988, was filed September 19, 1988. Debtors did not satisfy obligations for second quarter prior to filing the return. Any payments made during this quarter were not designated for a specific quarter, and deposits made during this quarter were insufficient to satisfy this quarter's liability.

Third Quarter: The return which was due October 31, 1988, was filed January 1, 1989. Any payments were not designated for a specific quarter, and deposits were insufficient to satisfy this quarter's liability.

Fourth Quarter: The return which was due January 31, 1989, was filed March 6,

1. The Service has the authority to require withholding taxes be placed in a segregated account by virtue of I.R.C. § 7512. This section requires deposit of said funds into a separate account designated for the sole purpose of collection of

withholding tax within two days of collection of same from its employees. It is not apparent from the facts when the Service began requiring deposits.

1989. Payments were not made during this quarter, and deposits made during this quarter were insufficient to satisfy the underlying obligation for this quarter. The October 1989 installment agreement payments were applied to this quarter.

Tax year 1989:

First Quarter: The return which was due April 30, 1989, was filed June 26, 1989. Any payments made during this quarter were not designated for a specific quarter, and deposits made during this quarter were insufficient to satisfy this quarter's liability.

Second Quarter: The return which was due July 31, 1989, was filed September 11, 1989. Any payments made during this quarter were not designated for a specific quarter, and deposits made during this quarter were insufficient to satisfy this quarter's liability.

Third Quarter: The return which was due October 31, 1989, was filed January 29, 1990. Any payments during this quarter were not designated for a specific quarter, and deposits made during this quarter were insufficient to satisfy this quarter's liability.

Fourth Quarter: The return which was due January 31, 1990, was filed April 2, 1990. Some payments made during this quarter were designated for a specific quarter. However, deposits made during this quarter were still insufficient to satisfy the quarter's liability.

Liability for 1990:

First Quarter: The return which was due April 30, 1990, was filed June 25, 1990. Debtors paid more than $20,000 above the current quarter's liability. Some payments were designated to other quarters. Deposits made this quarter were in excess of current quarter's liability.

Beginning with the first quarter 1988, Debtors failed to satisfy their liabilities. The Service takes the position it may apply payments and deposits made prior to Debtors' quarterly return, without regard to which quarter the payments or deposits were made. Therefore, when Debtors became in default of aggregate deposit and payment amounts for the first quarter of 1988, the Service satisfied first quarter liabilities with second quarter payments and deposits. This application of payments and deposits went on until Debtors no longer paid employees in 1990. Tax liabilities remain for various quarters on Debtors' operation which has given rise to the Service's I.R.C. § 6672 penalty claim.

### Discussion

An employer is required to report the amount of taxes withheld from its employees on Form 941. Generally, the tax is due and a tax return must be filed on a quarterly basis. It is important to note withholding tax liability arises at the time the taxes are deducted from the employee's wages. See I.R.C. § 7501; *Kalb v. United States,* 505 F.2d 506, 509 (2d Cir.1974), *cert. denied* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). The custodian of the "trust fund" is prohibited from using these funds earmarked for taxes previously paid by its employees, to satisfy other creditor obligations. *Mazo v. United States,* 591 F.2d 1151, 1157 (5th Cir.1979); *see also* I.R.C. §§ 3102(b), 3403, 7501(a).

When trust fund taxes are used to pay other creditors, I.R.C. § 6672 liability arises as to the person responsible under the Code for the payment of those tax liabilities. This Court has previously held, the "responsibility" under I.R.C. § 6672 is couched upon the status, duty and authority of an individual. *In re Hanshaw,* 94 B.R. 753, 756 (Bankr. M.D.Fla.1988). The documentary evidence and testimony afford this Court a finding Debtors are subject to "responsible person" liability under I.R.C. § 6672, and is not contested by Debtors.

Notwithstanding, Debtors raise an interesting argument. Debtors point out they paid an aggregate amount that exceeds their actual liabilities for all withholding taxes. When the Service applied these funds to periods already in default, a subsequent default would caused unwarranted penalties in a different quarter which may otherwise be satisfied. In other words, Debtors' position

is payments or deposits made in a current quarter should not have been applied to other periods of default unless the current obligations were satisfied first.

The Service asserts it may apply non-designated payments in any manner in its best interests. This Court recognizes Revenue Ruling 73–305 as modified by Revenue Ruling 79–284 as being dispositive on this issue. 1973–2 C.B. 43 and 1979–2 C.B. 83 respectively. Under those Rulings, "[i]f no designation is made[, the Service] ... will allocate partial payments of withheld employment taxes ... to tax, penalty, or interest in a manner serving its best interest." Rev.Rul. 79–284, 1979–2 C.B. 83. This Court agrees with Rev.Rul. 79–284. The only issue in the instant case is which payments have been designated or misapplied by the Service which subsequently caused alleged unwarranted penalties.

With respect to payments made by check, Debtors' argument is only feasible if the Service should have known either directly or indirectly where to apply the payments or deposits. Debtors must show the payments they made are so closely associated with filing a quarterly return, or so closely related to weekly wages, that those payments in effect gave notice of designation to the Service of what quarter they were to be applied. For example, payments not designated for a specific quarter, but accompanied by a quarterly return should be applied to that return as being directly designated. Payments that exactly follow the withholding for a wage period, might be an indirect designation. There is no evidence to support a finding Debtors made payments consistent with a wage period's withholding tax. The Court finds non-designated payments may be applied by the Service at their discretion if those payments were not accompanied with a quarterly return, or were insufficient to pay that quarter's taxes, not penalty or interest, as shown on the tax return.

■ Notwithstanding the Service's ability to apply non-designated payments to any tax liability for withholding, it does not appear the Service has the same flexibility in applying deposits.[2] Under I.R.C. § 7512, an employer such as the Debtors must make deposits to a trust account within a specific period of time after wages have been paid. These tax liabilities may not be assessed until a tax return is filed, but the deposits are held in an account for a specific quarter's liability. For this reason it would appear inconsistent to allow the Service to apply deposits as if they are non-designated payments, while recognizing the mechanics and purpose of making deposits into a trust account for a particular quarter.

■ Therefore, this Court finds the appropriate method of dealing with all funds remitted is as follows:

1) Payments made with designation for a specific period, or as agreed to by the parties, shall be applied as designated, or agreed;

2) Payments made with quarterly returns should be first applied to that return's quarter if payment satisfies tax shown due on return;

3) Deposits should be applied to the quarter in which they were made, regardless of when a quarterly return was filed for the quarter;

4) Funds remitted pursuant to 2 or 3 above, which are more than that quarter's tax, penalties, and interest, the Service may apply them as if payments were non-designated; and,

5) Payments not designated in writing shall be applied pursuant to Revenue Ruling 73–305.

This Court finds the above criteria is consistent with Revenue Ruling 73–305, 1973–2 C.B. 43, and in light of the apparent confusion, the morass of payments, filing, and effort expended in communication with the Service, it appears appropriate to require the

2. It is important to note the Service has the authority to require withholding taxes be placed in a segregated account by virtue of I.R.C. § 7512. *Supra* note 1. It is not apparent from the facts when the Service began requiring deposits, but technically Debtors should not have been making payments in any other fashion. Once required, the failure to comply with depositing withholding taxes may give rise to a deposit penalty, which was in fact assessed against Debtors in each quarter after 1987.

Service to amend its proof of claim in this respect.[3]

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Debtors' Objection to Claim of the United States of America be, and the same is hereby, sustained in part and overruled in part. The payments applied to the delinquent first, second, and third quarter 1987 withholding tax liabilities shall be deemed applied correctly in consideration of the Internal Revenue Service waiving all penalties and interest for those periods. It is further

ORDERED, ADJUDGED AND DE-CREED that the United States of America (Internal Revenue Service) shall amend its Proof of Claim to reflect Debtors' I.R.C. § 6672 liabilities for taxes, penalties, and interest, in accordance with this Court's ruling.

DONE AND ORDERED.

---

3. This Court does not have the ability from the evidence to compute penalties, interest, and complex accounting in tax disputes as in the instant case. For this reason the Service shall be required to amend its proof of claim as relates the application of payments as provided above for the respective quarters. It should be noted, however, given the limited evidence in the record to support Debtors' contentions, this Court is not persuaded this ruling makes an appreciable difference in the taxes, penalties, and interest in which Debtors will remain liable. Given Debtors' dilatory filing and payment history there is the distinct possibility Debtors have effectively argued a position more advantageous to the Service when penalties and interest are recalculated under the above ruling.