**Robert E. WHITE, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 96–814T.**

United States Court of Federal Claims.

April 19, 1999.

Brenda H. Undeland, Upper Marlboro, MD, attorney of record for plaintiff.

Sheryl B. Flum, with whom were Thomas D. Sykes, Mildred L. Seidman, Chief, Court of Federal Claims Section, and Loretta C. Argrett, Assistant Attorney General, Tax Division, United States Department of Justice, Washington, D.C., attorneys for defendant.

## OPINION

HORN, Judge.

The above-captioned case comes before the court · on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The plaintiff filed this complaint against the United States in

an attempt to recover a tax penalty assessed to him pursuant to 26 U.S.C. § 6672 (1988).

The plaintiff argues that payments made to the Internal Revenue Service (IRS) were properly designated by him to be applied to his employment tax liability for the first, second, third, and fourth quarters of 1992 and, therefore, that he is not liable for the penalty assessed pursuant to 26 U.S.C. § 6672. Defendant argues that these payments were not properly designated, because no specific instructions for the designation were included with either of the payments, thus, allowing the IRS to allocate the voluntary payments to other outstanding tax liabilities owed by the plaintiff. For the reasons discussed more fully below, defendant's motion for summary judgment is **GRANTED**, and plaintiff's cross-motion for summary judgment is **DENIED**.

### FACTS

Plaintiff, Robert E. White, was the owner and president of the Village Market, Inc. from its creation in 1979 until it ceased doing business in November of 1992. As of November of 1992, the corporation was delinquent in remitting employment taxes for the first and second quarters of 1990, the second, third, and fourth quarters of 1991, and the first, second, and third quarters of 1992. The plaintiff stipulates that he is the responsible party for the willful failure to remit Village Market, Inc.'s employment taxes for all of these periods at issue.

In an attempt allegedly to pay Village Market, Inc.'s employment tax for the first, second, third, and fourth quarters of 1992, plaintiff remitted a check for $19,894.07 on November 12, 1992, to Farmers & Merchants National Bank, along with a Federal Tax Deposit Coupon (FTD), Form 8109. Written in the memo portion of the check was "FED DEPOSIT THRU 11/16/92." The FTD accompanying the November 12, 1992 payment indicated that the payment was being made on behalf of Village Market, Inc., Employer Identification Number 54–1094718, the type

of tax was "941 [1]," and the tax period written on the form was "fourth quarter." The IRS applied the November 12, 1992 payment against Village Market, Inc.'s employment tax liability of $1,809.39 to the then current, fourth quarter of 1992, thus creating an overpayment of $18,084.68.

Plaintiff did not send any other written communication to the IRS regarding the allocation of the $18,084.68 overpayment, but did indicate on the Form 941 that there was an overpayment of $18,084.68 and checked the box to request that the overpayment be refunded. Instead of refunding the overpayment, the IRS reallocated the $18,084.68 to Village Market, Inc.'s outstanding employment tax liability (including accrued penalties and interest) for the second and fourth quarters of 1991 and a partial payment to the first quarter of 1992.

On or about January 8, 1993, the plaintiff made another attempt allegedly to pay Village Market, Inc.'s employment tax for the first, second, and third quarters of 1992, by sending the IRS a personal check for $15,000.00. In what he argues was an attempt to designate the payment, the plaintiff noted in the memo portion, on the face of the check, Village Market, Inc.'s Employer Identification Number (54–1094718) and wrote "PREV. STORE TAX." Plaintiff did not provide any other written instruction regarding the allocation of the January 8, 1993 payment. The IRS applied the January 8, 1993 payment to Village Market, Inc.'s outstanding employment tax liability (including accrued penalties and interest) for the first and second quarters of 1990 and the third quarter of 1991.

Since neither the November 12, 1992 payment nor the January 8, 1993 payment was used to satisfy plaintiff's liabilities for the first, second, or third quarters of 1992, the plaintiff was assessed a penalty of $12,166.42 pursuant to 26 U.S.C. § 6672 (1988) [2] on September 19, 1994 for the unpaid taxes for those quarters. The plaintiff has subse-

---

1. 941 refers to the tax form used to pay quarterly employment taxes. The form is used to indicate the type of tax and to which quarter the payment should be allocated.

2. 26 U.S.C. § 6672 is a penalty for the willful failure to pay taxes. The penalty amount is 100 percent of the tax due. *See* 26 U.S.C. § 6672 (1988).

quently paid these obligations in full. The complaint in the instant action seeks to recover the $12,166.42 paid against the assessment issued by the IRS pursuant to 26 U.S.C. § 6672.

## DISCUSSION

The defendant in the above-captioned case has filed a motion for summary judgment, and the plaintiff has filed a cross-motion for summary judgment. Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar both in language and effect.[3] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.,* 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. 674, 679 (1990), *aff'd,* 944 F.2d 885 (Fed.Cir.1991); *Rust Communications Group, Inc. v. United States,* 20 Cl.Ct. 392, 394 (1990). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute

about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States,* 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd,* 937 F.2d 622, 1991 WL 93077 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the nonmoving party cannot present evidence to support its case under any scenario, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence

---

**3.** In general, the rules of this court are patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including RCFC 56. *See Jay v. Sec'y*

*DHHS,* 998 F.2d 979, 982 (Fed.Cir.1993); *Imperial Van Lines Int'l, Inc. v. United States,* 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States,* 17 Cl.Ct. 67, 70 (1989).

showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States,* 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

The fact that both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.,* 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Casualty & Sur. Co.,* 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968); *Bataco Indus., Inc. v. United States,* 29 Fed.Cl. 318, 322 (1993), *aff'd,* 31 F.3d 1176, 1994 WL 329612 (Fed. Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States,* 812 F.2d at 1391.

The parties have filed an extensive joint stipulation of facts and neither the court nor the parties involved have identified a material issue of disputed fact. Thus, the court determines that the case is ripe for summary judgment.

The parties also agree that only one issue of law remains before the court. The only issue remaining is "[w]hether the November 12, 1992, and January 8, 1993, payments sent by the plaintiff to the Internal Revenue Service, in relation to the employment tax liability of Village Market, Inc., were properly designated as payments of trust fund liability for either the first, second, or third quarters of 1992, and, if so, whether the corporation's trust fund tax liability for those quarters had been paid in full, or in part, so that plaintiff's liability for the penalty under 26 U.S.C., section 6672 was either eliminated or reduced."

■ The parties further agree that when a taxpayer makes a voluntary payment to the IRS, the taxpayer has the right to direct the application of the payment to the liability he chooses. *See Muntwyler v. United States,* 703 F.2d 1030, 1032 (7th Cir.1983). Moreover, Revenue Ruling 73–305, 1973–2 C.B. 43, states that a taxpayer may designate the application of voluntary partial payments of withheld employment taxes, but only if the taxpayer provides specific written instructions. *See also Hammon v. United States,* 21 Cl.Ct. 14, 29 (1990). The payments made

in the instant action were voluntary.[4]

■ In the absence of proper designation, pursuant to 26 U.S.C. § 6402(a) (1988), however, the IRS is authorized to credit voluntary overpayments against any outstanding internal revenue tax liability of the taxpayer. In relevant part, Revenue Ruling 79–284, 1979–2 C.B. 83, reads: "If no designation is made by the taxpayer, the Internal Revenue Service will allocate partial payments of withheld employment taxes and collected excise taxes to tax, penalty, or interest[5] in a manner serving its best interest." *See also Davis v. United States*, 961 F.2d 867, 878 (9th Cir.1992), *cert. denied*, 506 U.S. 1050, 113 S.Ct. 969, 122 L.Ed.2d 124 (1993); *Wood v. United States*, 808 F.2d 411, 416 (5th Cir.1987); *Teets v. United States*, 29 Fed.Cl. 697, 703 n. 13 (1993); *Hammon v. United States*, 21 Cl.Ct. at 29 (although the checks sent to the IRS contained some "ambiguous markings," there was nothing to indicate the plaintiff intended a different allocation of the funds, and the IRS was allowed to apply the funds to preexisting delinquencies).

■ In the case before the court, the plaintiff argues that the notation on the November 12, 1992 payment, "FED. DEPOSIT THRU 11/16/92," was a proper designation for plaintiff's choice of the payment to be allocated to the first, second, and third quarters of 1992. Furthermore, the plaintiff argues that FTDs are designated payments that only should be applied to employment tax liabilities and not to penalties or interest. Defendant argues that the plaintiff did not provide any written communication as to the application of the plaintiff's overpayment, and in accordance with Revenue Ruling 79–284, the IRS allocated the overpayment "in a manner best serving its interest."

This court finds that the notation on the plaintiff's check, "FED. DEPOSIT THRU 11/19/92," does not constitute a "specific written instruction" for the allocation of the November 12, 1992 payment to the first, second, and third quarters of 1992. Ambiguous markings do not constitute specific written instructions. *See Hammon v. United States*, 21 Cl.Ct. at 29. It would be impossible to conclude that the notation "FED. DEPOSIT THRU 11/16/92" was a specific instruction that the payment should have been allocated to the first, second, and third quarters of 1992, rather than to the then current fourth quarter of 1992, or to plaintiff's multiple other outstanding liabilities for other previous tax quarters. If plaintiff wanted his funds applied only to the first, second, and third quarters of 1992, why would he make specific reference to the date 11/19/92, which is well into the fourth quarter of 1992. Moreover, the only instruction actually received by the IRS with the November 12, 1992 payment was on the FTD, on which plaintiff indicated that the payment was for tax "941" for the "fourth quarter" of 1992, and that any overpayment should be "refunded" to the taxpayer.[6] In fact, even if the notation on the check could have constituted a "specific written instruction," it would have never reached the IRS, because the actual check was deposited into a trust fund account with the bank and was never received by the IRS.

■ The plaintiff also argues that the notation, "# 54–1094718, PREV. STORE TAX," in the memo portion of the January 8, 1993 payment, constitutes a specific written instruction for the designation of the payment. The court also finds that the notation on the January 8, 1993 payment does not constitute specific written instructions to the IRS to

---

**4.** In *Amos v. Commissioner of Internal Revenue*, the court defined an involuntary payment as "any payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." 47 T.C. 65, 69, 1966 WL 1102 (1966). None of the relevant payments were made as a result of distraint, levy, or court proceeding, they are considered to be voluntary.

**5.** *See Kinnie v. United States*, 994 F.2d 279, 285–86 (6th Cir.1993) (court approves application of

portion of withholding taxes toward interest and penalties under Revenue Ruling 79–284); *In re Dunhill Medical, Inc.*, No. 92–37700, 1996 WL 354696, at *2–3 (Bankr.D.N.J. Mar. 27, 1996); *Williams v. United States*, No. CV87–PT–2207–S, 1992 WL 94786, at *2 (N.D.Ala. Oct. 6, 1994).

**6.** Even if the overpayment had been refunded to the plaintiff, the plaintiff's delinquent tax obligation would have remained unpaid and the assessment of penalties and interest would have been appropriate.

apply the voluntary payment to the first, second, and third quarters of 1992, which are not even mentioned in the notation. This is especially true since the plaintiff also owed unpaid taxes for other quarters prior to 1992.

The plaintiff cites *Elms v. United States,* 39 F.3d 1181, 1994 WL 592948 (6th Cir.1994), an unpublished opinion, in support of his position that federal tax deposits are designated payments and should only be applied to employment tax liabilities. First, it is important to note that under Sixth Circuit Rule 24(c), "citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case," and RCFC 52.1(a) states: "unpublished opinions and orders of the court are binding on the parties, but have no precedential effect." In *Elms,* a corporation had made sufficient payments to cover its tax liability in full, but had made a clerical error in specifying to which quarter the payment was to be applied. *See* 1994 WL 592948 at *1. This oversight resulted in an overpayment for one period and an underpayment for the next. *See id.* The IRS chose to apply the overpayment to a late-payment penalty, and as a result, another penalty was assessed by the IRS for failure to pay taxes owed for the quarter that was missed due to the clerical error. *See id.* The court held that the full payment should have been applied to the withholding tax liability and not the late-payment penalty, because only one type of tax and tax period could be designated on the FTD, thereby depriving the taxpayer of "any opportunity to exercise its right to direct that an inadvertent overpayment be applied against existing payroll tax liabilities rather against [sic] than a newly assessed penalty." *Id.* at *2.

The facts of *Elms* are distinguishable from this case. The plaintiff in *Elms* made a clerical error. In the case at bar, there was no clerical error. Plaintiff's alleged attempts at directing the IRS were either imprecise or even misleading. Plaintiff had full opportunity to exercise his right to direct the application of his payment. For example, the plaintiff could have submitted separate FTD's for the first, second, and third quarters of 1992, along with the 1992 fourth quar-

ter payment. In addition, taxpayers are also able to send written instructions to the IRS, directing to which quarters payments should be applied. Although in *Elms,* the Sixth Circuit suggested that outstanding payroll obligations should have been satisfied before other "newly assessed liabilities," *Elms v. United States,* 1994 WL 592948 at *2, because of the differences in facts, the disfavored position of citing an unpublished case, and the non-precedential nature of unpublished and Sixth Circuit decisions on this court, *Elms* is not persuasive or binding.

The plaintiff also argues that his payment of the exact amount of employment tax due for 1992, in effect put the IRS on notice that his first payment discussed above was only for employment tax liability in 1992 and not for accrued penalties and interest. Defendant agrees that, "in some cases, in the absence of specific written instructions, the circumstances surrounding a payment can act as a designation," but argues that it does not apply to plaintiff's circumstance. For 1992, the plaintiff owed employment taxes of $6,941.00 for the first quarter, $6,458.78 for the second quarter, $5,124.78 for the third quarter, and $1,369.51 for the fourth quarter. The total of these amounts equals the November 12, 1992 payment of $19,894.07.

In *In the Matter of Ledin,* 179 B.R. 721, 725 (Bankr.M.D.Fla.1995), the court suggested that if the taxpayer can show that the payments "made are so closely associated with filing a quarterly return, or so closely related to weekly wages, that those payments in effect gave notice of designation to the [IRS] of what quarter they were to be applied." The court went on further to state that "payments that exactly follow the withholding for a wage period, might be an indirect designation." *Id.* In the *Ledin* case, however, the court found "no evidence to support a finding Debtors made payments consistent with a wage period's withholding tax." *Id.*

In the instant situation, the plaintiff allegedly attempted to designate his voluntary payments to the first, second, and third quarters of 1992. He claims that he attempted to make these payments twice. Unfortunately for the plaintiff, he did not provide specific

written instructions with either of his submitted payments. On November 12, 1992, plaintiff sent a payment with the notation indicating it was for "FED. DEPOSIT THRU 11/19/92," a date midway into the fourth quarter of 1992. Given the absence of clear direction from the plaintiff as to how to attribute the voluntary payment, the IRS, in its discretion, attributed the voluntary payment to the second and fourth quarters of 1991, a small portion of the first quarter of 1992 and the fourth quarter of 1992, and assessed penalties, in the amount of $12,-166.42, for willful failure to pay employment taxes for the first, second, and third quarters of 1992. At the time, the plaintiff also had other outstanding tax liabilities for previous tax quarters, all prior to November 19, 1992.

The *Ledin* case is distinguishable from the case before this court. First, decisions by the bankruptcy court are not binding on this court and the plaintiff in *Ledin* did not prevail. *See* 179 B.R. at 726. The plaintiff in *Ledin* was delinquent for eight quarters of employment taxes. *See id.* at 723–24. The court found that none of the payments made were consistent with any of the employment taxes due for any of the delinquent quarters and that the "non-designated payments may be applied by the [IRS] at their discretion." *Id.* at 725. In the instant action, if the plaintiff had been delinquent for only the first, second and third quarters of 1992, the language in *Ledin* may have been more persuasive. But the record reflects that the above-captioned plaintiff was delinquent for eight separate quarters. Requiring the IRS to match an exact payment amount, without proper designation, to one of multiple different possible tax totals owed, would be unreasonable and would force the IRS to guess regarding which of numerous tax liabilities it thinks a taxpayer might wish to pay off first. This unreasonable burden on the IRS is even more apparent when considering the large number of tax forms that are processed each year. The IRS exercised its discretion to apply plaintiff's voluntary payment as it saw fit.

The plaintiff further argues, based on *Ledin,* that the payment of employment taxes by personal check creates an indirect designation of payment. Plaintiff stated in the brief he filed with this court, that when he wrote "PREV. STORE TAX" he "meant the business' (store's) *previous* taxes. It is obvious that he meant for his personal funds to satisfy delinquent taxes and not be applied to penalties and interest." (emphasis in original). This argument is not persuasive. Payment of taxes with personal funds does not constitute an indirect designation for particular quarters or a particular type of tax liability. Furthermore, assessed penalties and interest are considered delinquent tax obligations of the taxpayer just as are liabilities for unpaid tax quarters.

The plaintiff has been unable to demonstrate to the court that specific written instructions were included with the November 12, 1992 payment or with the January 8, 1993 payment. Neither the facts of plaintiff's case nor the case law cited by the plaintiff support the plaintiff's argument that the November 12, 1992 payment or the January 8, 1993 payment should have been applied by the IRS to the employment taxes for the first, second and third quarters of 1992. In conclusion, the court finds that the penalties assessed under 26 U.S.C. § 6672 for the first, second, and third quarters, against the plaintiff, were proper.

## CONCLUSION

After full consideration of the contentions raised by the parties, for the reasons discussed above, the court, hereby, **GRANTS** defendant's motion for summary judgment, and **DENIES** the plaintiff's cross-motion for summary judgment.

**IT IS SO ORDERED.**