# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1774

_____

Donald R. Ferguson,                            *
                                               *
                Plaintiff,                      *
                                               *
        v.                                      *
                                               *
United States of America,                      *
                                               *
                Defendant/Appellee,            *   Appeal from the United States
                                               *   District Court for the
        v.                                      *   Southern District of Iowa.
                                               *
Richard Musal,                                 *
                                               *
                Third Party Defendant/         *
                Appellant,                      *
                                               *
Nicholas P. Miller,                            *
                                               *
                Third Party Defendant.         *

_____

Submitted: January 11, 2007
    Filed: April 27, 2007

_____

Before WOLLMAN and MELLOY, Circuit Judges, and *NANGLE,[1] District Judge.

_____

[1]The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

WOLLMAN, Circuit Judge.

This case arises from an assessment of trust fund recovery penalties pursuant to 26 U.S.C. § 6672 against Richard Musal and several other individuals involved in the operation of AccessAir, Inc. (AccessAir). Musal appeals from the district court's[2] grant of summary judgment, which found Musal to be a responsible person under § 6672. Musal also appeals from the district court's denial of his motions for a new trial and judgment as a matter of law. We affirm.

## I.

AccessAir, a wholly owned subsidiary of AccessAir Holdings, Inc. (Holdings), was a corporation that provided commercial passenger air transportation within the continental United States. It operated from February 1999 until November 1999, when it filed for bankruptcy. Musal served as the Chief Financial Officer (CFO) of AccessAir from its inception, and as President and Chief Operating Officer (COO) of AccessAir starting in August 1999. As the CFO, Musal was in charge of overseeing the company's finances and accounting and was authorized to sign checks on behalf of AccessAir. Once Musal became President and COO, all of AccessAir's departments reported to him.

In its second, third, and fourth quarters of 1999, AccessAir failed to remit to the Internal Revenue Service (IRS) excise taxes that were collected from the sales of airline tickets as required by 26 U.S.C. § 4261.[3] Using a worksheet provided to him

[2]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

[3]Under § 4261, customers purchasing airline tickets are required to pay a tax that is based upon a percentage of the ticket's price plus a flat rate per each domestic flight segment. 26 U.S.C. § 4261(a), (b) (2006). In 1999, these taxes were imposed at eight percent of the ticket price and $2.00 per segment for tickets sold prior to

-2-

by AccessAir (later marked as Exhibit 4050), IRS Revenue Agent Jerry Robertson determined that the company's total excise tax liability for these three quarters was $1,404,404.09 and thereafter made the corresponding assessments against the company. When AccessAir failed to pay the amount due, the IRS, pursuant to 26 U.S.C. § 6672,[4] assessed a trust fund recovery penalty in the amount of $1,300,552.09 against Musal and two other company officials – Roger Ferguson and Nicholas Miller.[5] After Ferguson filed a claim for a refund of his trust fund recovery penalty, the government brought a counterclaim against Ferguson, Miller, and Musal seeking to reduce to judgment the assessed penalties.

The government brought a cross-motion for summary judgment against Musal and Miller. The district court granted the government's motion against Musal, finding him to be a responsible person under § 6672 and concluding that he had not carried his burden of proof in showing that the excise tax assessment was erroneous or excessive, but denied the government's motion as to Miller. The case against Ferguson and Miller subsequently proceeded to trial, at which Ferguson was found to be a responsible person for the second and third quarters of 1999, Miller was not found to be a responsible person for any quarter, and the excise tax assessments for the second and third quarters were found to be erroneous and excessive. Musal thereafter moved for reconsideration of the district court's previous grant of the government's motion for summary judgment against him. The district court granted Musal's motion in part and set aside the portion of its previous order regarding

---

October 1, 1999, and at seven-and-one-half percent of the ticket price and $2.25 per segment for tickets sold after September 30, 1999. 26 U.S.C. § 4261(a), (b), (e)(5).

[4]Under § 6672, any person who is required to collect and pay over a tax, and who willfully fails to do so, can be held liable for a penalty equal to the total amount of the tax not paid. 26 U.S.C. § 6672(a) (2002).

[5]Ferguson had served as the CEO of Holdings and the President of AccessAir prior to Musal. Miller had served as the controller of AccessAir.

Musal's liability for the amount of the assessment, but left in place its holding that Musal was a responsible person under § 6672. The court thereafter set for trial the sole issue of the accuracy of the second, third, and fourth quarter penalty assessment amounts against Musal.

Prior to trial, the district court granted Musal's motion for partial summary judgment, holding that collateral estoppel barred the government from relitigating the assessment amounts for the second and third quarters, which had previously been determined by the jury at Ferguson's and Miller's trial. This left the accuracy of the fourth quarter assessment as the sole issue remaining for trial. The court also denied the government's motion to take the trial deposition of Gordon Rosen, because he was not listed on the pretrial conference order and was not identified as having information relevant to the assessments.

The jury heard testimony from a number of individuals, including Rosen, who was allowed to testify despite the district court's prior deposition ruling. A number of exhibits were also presented, including Exhibit 4050 (the worksheet provided by AccessAir to Robertson) and Exhibit 4502 (an alleged summary of AccessAir's reservation accounting records). The jury was instructed that the IRS's assessment was presumptively correct and that Musal carried the burden of proving that the assessment was erroneous and excessive. The jury's verdict found that Musal had not proved that the fourth quarter assessment was erroneous or excessive. Judgment was accordingly entered against Musal for $452,934.85 – the amount of the IRS's fourth quarter assessment.

Musal subsequently filed motions for judgment as a matter of law and for a new trial, arguing that the fourth quarter assessment should not have been accorded a presumption of correctness and that Exhibits 4050 and 4502, as well as Rosen's testimony, were erroneously admitted into evidence. The district court denied both motions.

## II.

We first address whether the district court erred in granting summary judgment for the government on the issue of Musal's status as a responsible person. "We review a district court's grant of summary judgment *de novo*." Keller v. United States, 46 F.3d 851, 853 (8th Cir. 1995). Summary judgment is proper if the "record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law." Id.

To incur liability under 26 U.S.C. § 6672, an individual must be a responsible person and must willfully fail to pay over the taxes in question. Jenson v. United States, 23 F.3d 1393, 1394 (8th Cir. 1994). A responsible person is someone who has "'the status, duty and authority to avoid the corporation's default in collection or payment of the taxes.'" Barton v. United States, 988 F.2d 58, 59 (8th Cir. 1993) (quoting Kenagy v. United States, 942 F.2d 459, 464 (8th Cir. 1991)). "A responsible person acts willfully if he 'acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes, or by proceeding with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government.'" Keller, 46 F.3d at 854 (quoting Honey v. United States, 963 F.2d 1083, 1087 (8th Cir. 1992)).

The undisputed facts in this case show that Musal was the CFO of AccessAir throughout the first three quarters of 1999 and the President and COO of AccessAir throughout the fourth quarter of 1999. In these capacities, Musal was authorized to sign checks and disburse corporate funds on behalf of AccessAir, and he admits that he had the authority to pay the company's excise taxes without board or management approval. These facts indicate that Musal had at least the initial authority to pay the

excise taxes. What Musal contends on appeal, however, is that he was divested of this authority when the board directed him to pay only the obligations of the company that were necessary to keep the company's planes in the air. We find this argument unpersuasive.

First, as noted by the district court and as Musal himself acknowledges, the board never explicitly instructed Musal to not pay the excise taxes. Rather, he chose to forgo doing so in order to pay other company expenses. He therefore retained the authority to pay the taxes had he decided to do so. Second, even if the board's directive could be construed as an instruction to not pay the taxes, such instructions "'do not . . . take a person otherwise responsible under section 6672(a) out of that category.'" Greenberg v. United States, 46 F.3d 239, 243-44 (3d Cir. 1994) (quoting Brounstein v. United States, 979 F.2d 952, 955 (3d Cir. 1992)).[6] Musal's argument that the board's directive removed him from responsible person status under § 6672 is therefore unavailing.

We are also satisfied that Musal acted willfully in failing to pay the excise taxes. Musal had knowledge of AccessAir's financial condition and was fully aware that the company had not been turning over the required excise taxes for the second, third, and fourth quarters of 1999. Despite this knowledge, Musal continued to direct payments to the company's other creditors in lieu of paying the excise taxes. These facts support a determination that Musal's failure to pay the required excise taxes was willful. Olsen v. United States, 952 F.2d 236, 240 (8th Cir. 1991) ("Evidence that the

[6]In his reply brief, Musal argues that we had previously addressed and rejected this principle in United States v. Bisbee, 245 F.3d 1001 (8th Cir. 2001). That is not the case. Although we did in fact mention this principle in Bisbee, our holding that the individual was not a responsible person was not based on the fact that the individual had received instructions from his superiors to not pay the taxes; nor did we hold that such instructions would in fact absolve the individual from such liability. Bisbee, 245 F.3d at 1008. Rather, our holding was based on our determination that the individual did not have the authority to pay the taxes in the first place. Id.

-6-

responsible person had knowledge of payments to other creditors, including employees, after he was aware of the failure to pay over withholding taxes is proof of willfulness as a matter of law.").

We therefore conclude that the district court did not err in granting summary judgment for the United States on the issue of Musal's status as a responsible person.

## III.

We next turn to whether the district court erred in denying Musal's motion for a new trial. Musal contends that this motion should have been granted because the district court erred in admitting Exhibits 4050 and 4502, in permitting Rosen to testify at trial, and in instructing the jury that the IRS's assessment was presumed to be correct. We review a district court's evidentiary rulings, jury instructions, and denial of a new trial for abuse of discretion, according substantial deference to the district court's rulings. Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1059 (8th Cir. 2005); Campos v. City of Blue Springs, Mo., 289 F.3d 546, 551 (8th Cir. 2002).

### A.  Exhibit 4050

Exhibit 4050 is a spreadsheet containing figures regarding AccessAir's excise tax liabilities for the second, third, and fourth quarters of 1999. It was provided to Robertson by Charles Collins, Miller's successor as the controller of AccessAir. This spreadsheet was the sole basis for the amount of excise tax that the IRS assessed against AccessAir for the fourth quarter of 1999. At trial, Musal objected to the admission of Exhibit 4050 as not having sufficient authentication, foundation, or identification, as being irrelevant and unfairly prejudicial, as constituting hearsay, and as an improper summary document. The district court overruled the objections and admitted the exhibit, opining that it was being offered to show what the IRS relied on

in making its assessment and not for the truth of the financial information contained therein. The district court also refused to give a requested limiting instruction to the jury regarding the exhibit because the exhibit was "some evidence of what the assessment should have been." On appeal, Musal argues that Exhibit 4050 was inadmissible hearsay, that a limiting instruction should have been given, and that the exhibit was not properly identified or authenticated.

Under Rule 801(c) of the Federal Rules of Evidence, an out of court statement is hearsay only if it is offered to prove the truth of the matter asserted. FED. R. EVID. 801(c); United States v. Looking Cloud, 419 F.3d 781, 787 (8th Cir. 2005). Although Exhibit 4050 was in fact an out of court statement, it was not admitted to prove the truth of matters asserted, i.e., that the figures contained on the spreadsheet were accurate calculations of what the excise tax should be. Rather, it was admitted as evidence of what the IRS had relied on in making its assessment. Accordingly, the district court did not err in admitting Exhibit 4050 for this purpose.

As for the limiting instruction, Rule 105 of the Federal Rules of Evidence provides that "[w]hen evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." FED. R. EVID. 105. Here, the district court refused to grant Musal's request for a limiting instruction regarding Exhibit 4050 because the exhibit was some proof of what the assessment should have been. Using the exhibit in this way, however, is precluded by the rules of evidence and contradicts the reason the exhibit was admissible in the first place, as the jury would in essence be using the figures on Exhibit 4050 to prove the truth of the matter asserted. We consequently see no good reason why the limiting instruction should not have been given, and we conclude that the district court erred by failing to give it.

Given the other evidence presented at trial, however, we do not consider this misstep to constitute reversible error. "An evidentiary error is harmless 'if, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict.'" United States v. Crenshaw, 359 F.3d 977, 1003-04 (8th Cir. 2004) (quoting United States v. Carroll, 207 F.3d 465, 470 (8th Cir. 2000)). Revenue figures from other documents presented at trial support a finding of an excise tax liability for September and October that is close to, if not more than, the amount assessed by the IRS for these months,[7] and the segment data AccessAir submitted to the Department of Transportation supports a fourth quarter segment tax liability close to that assessed by the IRS.[8] AccessAir's balance sheets from September and November of 1999 show an accrued excise tax amount exceeding $1,000,000 and accrued segment fee tax liability exceeding $400,000. In a letter sent to AccessAir's board of directors in December 1999, Musal included a worksheet that estimated the costs of satisfying the accrued excise taxes to be between 1.5 and 2 million dollars. Additionally, the statement of financial affairs submitted by AccessAir to the bankruptcy court, and verified by Musal under penalty of perjury, stated that the amount of excise tax owing exceeded 1.7 million dollars and that the amount of segment fee tax owing was nearly $400,000. In light of this significant additional evidence supporting an excise tax

---

[7] Using the sales figures from AccessAir's unaudited September balance sheet and the revenue figures from two reports that had been prepared by Musal, the amount of excise tax accrued by AccessAir based on the percentage of ticket sales would be either $108,665.60, $127,898.40, or $171,536.80 for the month of September, and $156,999.97 for the month of October. Any of these amounts would be higher than the amounts assessed by the IRS for September and October, which were $104,578.81 and $109,807.75 respectively.

[8] Depending on one's interpretation of the segment fee information AccessAir submitted to the Department of Transportation, the segment fee portion of the excise tax assessment against AccessAir for the fourth quarter of 1999 could range from as low as $98,840 to as high as $144,524.50. The segment fee assessed by the IRS for this quarter was $123,250.14.

liability similar to or exceeding that found on Exhibit 4050, we conclude that the district court's refusal to give a limiting instruction regarding the use Exhibit 4050 was harmless.

We further conclude that Exhibit 4050 was sufficiently identified and authenticated for purposes of Rule 901(a) of the Federal Rules of Evidence. Because Exhibit 4050 was admitted solely to show the basis of the assessment, the United States was not required to authenticate the actual information contained in the exhibit, as Musal contends. Rather, the government was required to authenticate only that the exhibit was what they asserted it to be, that is, a spreadsheet from AccessAir that the IRS had relied on in calculating the assessment amount. See United States v. Wadena, 152 F.3d 831, 854 (8th Cir. 1998) ("A party authenticates a document by presenting evidence sufficient to support a finding that the document is what the party claims it to be."). Robertson's testimony constituted adequate authentication for this purpose.

## B. Gorden Rosen's Testimony

Gorden Rosen was the President of ARM Software, the company that provided the accounting software utilized by AccessAir. Prior to Musal's trial, the government filed a motion to take the deposition of Rosen and three other individuals for purposes of preserving their testimony for trial. A magistrate judge[9] denied the government's motion, stating that he found "no compulsion to allow these three witnesses to testify at any trial against Musal" because there had been no showing that these witnesses possessed any crucial information necessary for Musal's trial. D. Ct. Order of Dec. 3, 2004, at 5. The district court denied the government's motion to reconsider this decision, opining that the orders were not clearly erroneous or contrary to law. At trial, however, the district court permitted Rosen to testify, but stated that his

---

[9]The Honorable Thomas J. Shields, United States Magistrate Judge for the Southern District of Iowa.

testimony would be limited to questions regarding the validity of the software system, what had to be changed in the software system, and what he had been asked to do in the process of cleaning up the company's accounting system. Musal argues that the district court erred in allowing Rosen to testify and, alternatively, that Rosen's testimony was not properly limited.

In its opinion denying Musal's post-trial motions, the district court stated that Rosen was permitted to testify because the court learned for the first time at the beginning of trial that Musal's defense was based in part on the inaccuracy of Rosen's software, thereby making Rosen's testimony significantly more relevant. In light of this new information, the court concluded that, notwithstanding its prior order, it should allow Rosen to testify. Musal contends that in the absence of a finding that the magistrate judge's ruling was clearly erroneous or contrary to law, the district court was precluded from allowing Rosen to testify. Musal further argues that the district court could not take into account any new information regarding the use of Rosen's testimony when reconsidering the magistrate judge's ruling.

A district court may reconsider a magistrate judge's ruling on nondispositive pretrial matters where it has been shown that the ruling is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A) (2006). In this case, however, we do not interpret the district court's decision to allow Rosen's testimony at trial to be a reconsideration of the magistrate judge's order. The magistrate judge's order addressed solely the issue of whether the government would be permitted to take the depositions for purposes of preserving testimony for trial under Rule 32(a)(3)(B) of the Federal Rules of Civil Procedure. While the magistrate judge based his decision on his belief that Rosen did not possess relevant information, the magistrate judge's refusal to allow these depositions did not preclude the district court from allowing the government to call Rosen as a witness at trial, particularly in light of the information acquired by the district court subsequent to its affirmance of the magistrate judge's

-11-

order. Further, the district court's decision permitting Rosen to testify was not unfairly prejudicial to Musal.

With respect to Musal's alternative argument, we are satisfied that Rosen's testimony at trial was sufficiently limited and that the district court did not err in admitting it.

## C. Exhibit 4502

Exhibit 4502 was a two-page report that had been prepared by Rosen after AccessAir contacted him to review its accounting system. According to Rosen, the first page of the report summarized AccessAir's accounting information that had already been processed prior to beginning his review, and the second page summarized accounting information that had yet to be processed. Over Musal's objections, the district court allowed Exhibit 4502 to be admitted at trial. The government thereafter used Exhibit 4502 in conjunction with Rosen's testimony to help demonstrate Rosen's understanding of AccessAir's accounting system and the process he went through in reviewing it. Musal contends that Exhibit 4502 constituted inadmissible hearsay, that it was not an admissible summary, and that it was unreliable and untrustworthy.

As explained by the district court in its opinion denying Musal's post-trial motions, Exhibit 4502 was admitted because it "contains information that explains Rosen's efforts, his understanding, and his review of the accounting systems, without regard to the truth of the statements contained in Exhibit 4502." D. Ct. Order of Jan. 25, 2006, at 21. Accordingly, the exhibit did not constitute inadmissible hearsay, see FED. R. EVID. 801(c), and the district court did not abuse its discretion in admitting it. Musal's argument that Exhibit 4502 should have been excluded because the district

-12-

court failed to give a limiting instruction regarding its use is also unpersuasive. Because Musal failed to request that such instruction be given, we review the district court's failure to do so for plain error, United States v. Campbell, 937 F.2d 404, 408 (8th Cir. 1991), and we find none here.

Musal's argument that the district court erred in admitting Exhibit 4502 because it was unreliable and untrustworthy as a matter of law is also without merit. While we recognize that some of the figures contained in the exhibit may have been inaccurate,[10] the exhibit was not admitted to prove the truthfulness of such figures, and the alleged inaccuracies do not make the exhibit unreliable or untrustworthy as a whole, or as a matter of law. Further, Musal was free to contest the accuracy of Exhibit 4502 at trial.

## D. Presumption of Correctness

Musal asserts that the IRS's assessment was "naked," or without any foundation, because Exhibit 4050 should not have been admitted into evidence or, alternatively, because the exhibit was not a legally sufficient basis for the assessment. As a naked assessment, Musal contends that it should not have received a presumption of correctness, and that the district court therefore erred when it instructed the jury accordingly.

Assessments under § 6672 are ordinarily presumed to be correct. Riley v. United States, 118 F.3d 1220, 1221 (8th Cir. 1997). This presumption applies even if the assessment is based on an estimate, so long as the method for making the assessment is reasonable and logical. Dodge v. Commissioner, 981 F.2d 350, 353 (8th Cir. 1992) ("[T]he assessment is intended to be an estimate. It is expected to be

---

[10]Exhibit 4502 reflected ticket sale revenue for the month of December 1999, which was after AccessAir had ceased operations and filed for bankruptcy.

-13-

rational, not flawless."). An assessment will not be entitled to such presumption, however, if it is determined to be a naked assessment. Id. We have defined a naked assessment as one made "without any foundation whatsoever, or without some predicate supporting evidence." Id.

The IRS's assessment in this case did not constitute a naked assessment. As recounted above, Exhibit 4050 was the basis for the IRS's assessment, and was admissible at trial for precisely that reason. The fact that it was admitted to show only what the IRS relied on, and not the truth of its contents, does not preclude the presumption from applying. Cf. Portillo v. Commissioner, 932 F.2d 1128, 1133 (5th Cir. 1991) ("The presumption of correctness generally prohibits a court from looking behind the Commissioner's determination even though it may be based on hearsay or other evidence inadmissible at trial."). Further, we find the IRS's reliance on Exhibit 4050 to be both reasonable and logical, despite its alleged inaccuracies, given the fact that it had been obtained from AccessAir and was the only information made available to the IRS at the time of the assessment. See Caulfield v. Commissioner, 33 F.3d 991, 993-94 (8th Cir. 1994) ("Taxpayers who cannot produce adequate records 'may not complain of the inevitable inaccuracies in assessment their default occasions.'" (quoting Dodge, 981 F.2d at 353)). Exhibit 4050 therefore constituted sufficient predicate evidence supporting the assessment, and the district court did not err in according the assessment a presumption of correctness.

For the foregoing reasons, we conclude that the district court did not err in denying Musal's motion for a new trial.

## IV.

Finally, Musal contends that the district court erred in denying his motion for judgment as a matter of law. "We review de novo a district court's denial of a motion for judgment as a matter of law, examining the evidence in the light most favorable to the prevailing party and viewing all inferences in the prevailing party's favor." Zutz v. Case Corp., 422 F.3d 764, 769 (8th Cir. 2005). Such a judgment "is appropriate only where the evidence is entirely insufficient to support the verdict." Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). After reviewing the evidence in the light most favorable to the government, we conclude that it is sufficient to support the verdict and that the district court therefore did not err in denying the motion.

The judgment is affirmed.

_____