# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2011

_____

| | | |
|---|---|---|
| James H. Oppliger; Gayle Oppliger, | * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Defendant-Appellee. | * | Appeal from the United States |
| _____ | | District Court for the |
| | | District of Nebraska. |
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| James H. Oppliger; Gayle Oppliger, | * | |
| | * | |
| Defendants-Appellants. | * | |

_____

Submitted: December 16, 2010
Filed: March 29, 2011

_____

Before WOLLMAN, BRIGHT, and COLLOTON, Circuit Judges.

_____

BRIGHT, Circuit Judge.

James and Gayle Oppliger appeal from a summary judgment entered against them, which ordered them to pay the United States over $2 million in trust fund recovery penalties under 26 U.S.C. § 6672. The IRS assessed these penalties because the Oppligers' companies, Double O, Inc. ("Double O") and Livestock Feed Company, LLC ("LFC"), withheld taxes from their employees but did not remit those taxes to the government for approximately four years. The district court[1] granted summary judgment, concluding that undisputed facts established that the Oppligers qualified as "responsible persons" under § 6672 and willfully failed to pay the taxes. We affirm.

I.

In 1992, James and Gayle Oppliger formed Double O, a trucking business, and served as the sole owners and primary officers of the company. In 1997, the Oppligers formed LFC, a payroll company for Double O. The Oppligers were the sole members of LFC. All of Double O's employees, except Gayle, became LFC employees after the Oppligers established LFC. LFC only provided payroll services to Double O.

In 1996, the Oppligers hired Mary Kerkman to perform accounting and bookkeeping services for the companies. The Oppligers delegated to Kerkman the tasks of filing employment tax returns and paying payroll taxes. Kerkman provided the Oppligers with weekly reports that informed them of the companies' financial situations. Kerkman committed suicide on April 3, 2002. After her death, the Oppligers learned that Kerkman had embezzled $10,000 from the companies.

On April 4, 2002, the day after Kerkman's death, an IRS revenue officer visited the companies' offices and asked the Oppligers why they had not appeared at a

---

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

meeting with her. The IRS officer informed the Oppligers that LFC employment taxes were not paid to the government for thirteen consecutive quarters and Double O employment taxes were not paid for seventeen quarters. The Oppligers stated that they did not know of a meeting and later claimed that this was when they first learned that Double O and LFC had not been paying employment taxes.

The Oppligers subsequently sold the assets of Double O on September 1, 2002. Between April 4, 2002 and September 1, 2002, LFC paid $2,117,640.43 to its employees and $3,240,138.60 to third-party creditors.

Pursuant to § 6672, the United States assessed penalties against the Oppligers for LFC's unpaid taxes in the amount of $2,363,704.25 and Double O's unpaid taxes in the amount of $27,013.21. The Oppligers each paid $15,015 toward LFC's tax obligations. They then filed claims for a refund with the IRS, arguing that they were not liable for the unpaid taxes. The IRS denied their claims. The Oppligers brought this suit seeking a refund of the money paid and a ruling that they were not liable for the § 6672 penalties. The United States counterclaimed to have the LFC-related assessments reduced to judgment and filed a separate suit to reduce to judgment the Double O assessments. The district court consolidated the suits.

The United States moved for summary judgment. The district court granted the United States' motions. The court determined that, even assuming Kerkman provided the Oppligers with false reports and embezzled from the companies, there were no genuine issues of material fact regarding whether the Oppligers were responsible persons under § 6672. The court also determined that the Oppligers willfully failed to pay employment taxes because they admitted that after the IRS informed them of their outstanding tax liabilities, they paid employees and third parties over $5 million.

## II.

The Oppligers claim the district court erred in granting summary judgment in favor of the United States because disputed material facts exist. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party. *Keller v. United States*, 46 F.3d 851, 853 (8th Cir. 1995).

## III.

Employers must withhold income, Social Security, and Medicare taxes from employees' wages. 26 U.S.C. §§ 3101; 3102(a), (b); 3402; 3403. The law requires the employer to hold those taxes in trust and remit them to the IRS at the appropriate intervals. 26 U.S.C. § 7501. An employer holding the taxes in trust may not use the taxes for any other purpose. *Slodov v. United States*, 436 U.S. 238, 243 (1978). When an employer fails to remit the taxes, § 6672 imposes liability against any person[2] who is (1) a "responsible person" and (2) "willfully fails to pay over withholding taxes to the United States." *Keller*, 46 F.3d at 854.

## A.

Under § 6672, "[a] responsible person is someone who has the status, duty and authority to avoid the corporation's default in collection or payment of the taxes." *Ferguson v. United States*, 484 F.3d 1068, 1072 (8th Cir. 2007) (internal quotation

---

[2]For purposes of § 6672, 26 U.S.C. § 6671(b) defines "person" as including "an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

and citation omitted). More than one person may be a responsible person under § 6672 and delegating the responsibility of managing funds does not relieve one of his responsibilities. *Keller*, 46 F.3d at 854. When determining responsible person status under § 6672, courts often consider a non-exhaustive list of factors, including whether the individual:

> (1) serves as an officer or member of the board of directors;
> (2) owns substantial stock in the company;
> (3) manages day-to-day operations;
> (4) possesses the authority to hire or fire employees;
> (5) makes decisions as to the disbursement of funds and payment of creditors;
> (6) controls bank accounts and disbursement of records; and
> (7) possesses check-signing authority.

*See, e.g.*, *Erwin v. United States*, 591 F.3d 313, 321 (4th Cir. 2010); *Smith v. United States*, 555 F.3d 1158, 1163 (10th Cir. 2009); *Vinick v. United States*, 205 F.3d 1, 7 (1st Cir. 2000); *Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir. 1993); *Barnett v. I.R.S.*, 988 F.2d 1449, 1455 (5th Cir. 1993); *Fiataruolo v. United States*, 8 F.3d 930, 939 (2d Cir. 1993); *Brounstein v. United States*, 979 F.2d 952, 954-55 (3d Cir. 1992); *Williams v. United States*, 931 F.2d 805, 810 (11th Cir. 1991).

Here, the district court considered these factors and determined that the Oppligers qualified as responsible persons under § 6672. In granting summary judgment, the court relied on the following undisputed facts:

> The Oppligers formed the companies, held offices and managed the day-to-day business. The Oppligers each owned 50% of Double O, were the only shareholders, and were the directors of Double O. Jim Oppliger was the president and Gayle Oppliger the secretary of Double O. The Oppligers were also the creators of LFC. Jim Oppliger was the manager of LFC and the Oppligers had authority to hire and fire employees. The Oppligers attended executive and partnership meetings, called the

-5-

meetings, and signed the minutes. Both Oppligers possessed the authority to sign tax returns on behalf of both Double O and LFC. They signed payroll checks for both companies. They also signed for bank notes and on security agreements and served as personal guarantors.

Given these undisputed facts, we hold that the Oppligers were responsible persons under § 6672 because they had the status, duty, and authority to pay the trust fund taxes. The Oppligers claim that Kerkman's misconduct deprived them of the opportunity to make informed decisions regarding the finances of their companies. But whether Kerkman may have been a responsible person under § 6672 is immaterial to the Oppligers' liability. *See Colosimo v. United States*, 630 F.3d 749, 2011 WL 207933, at * 1, 2 (8th Cir. Jan. 25, 2011) (holding that the taxpayer was a responsible person even though he may have "been duped" by a dishonest bookkeeper). Thus, we agree with the district court that no genuine issue of material fact exists as to whether the Oppligers qualified as responsible persons.

B.

We next consider whether the Oppligers willfully failed to pay the trust fund taxes. An individual willfully fails to pay over employment taxes if he "acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes, or by proceeding with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the government." *Keller*, 46 F.3d at 854 (internal quotations and citations omitted). "The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, such as the payment of other creditors in preference to the United States." *Elmore v. United States*, 843 F.2d 1128, 1132 (8th Cir. 1988).

The district court determined that the Oppligers willfully failed to pay the taxes because, after Kerkman's death, an IRS revenue officer informed them of their

outstanding tax liabilities and, despite this knowledge, the Oppligers failed to pay the taxes. The district court noted that within six months of Kerkman's death, the Oppligers sold the assets of Double O, and paid employees $2,117,640.43 and third party creditors $3,240,138.60.

The Oppligers argue that on April 4, 2002, when the IRS officer informed them of the outstanding tax responsibilities, they had bank balances of $3,426.29 and $4,632.73 and had outstanding checks on both of the accounts. Relying on *Slodov v. United States*, 436 U.S. 238 (1978), the Oppligers claim that their potential liability as responsible persons is limited to the unencumbered funds available on April 4, 2002. They assert that when they reassumed control of their companies, unencumbered funds did not exist to pay the taxes owed.

In *Slodov*, the United States Supreme Court considered whether Slodov, who assumed control of three corporations with outstanding trust fund tax liabilities, should be personally responsible for the unpaid taxes. 436 U.S. at 240. During Slodov's control of the corporations, he acquired funds and used those funds to pay employees' wages and other creditors. *Id.* The United States sought to impose personal liability on Slodov, claiming that during his control of the corporations, the corporations generated sufficient receipts to pay the taxes back, but that he used the funds for other purposes. *Id.* at 250. The Supreme Court disagreed with the United States, holding that a person responsible to collect taxes does not willfully fail to pay in withholding taxes by using funds for purposes other than payment of taxes when, at the time he assumed control, no funds existed to pay the outstanding tax obligations. *Id.* at 251. The court reasoned that the money generated after he became a responsible person was not directly traceable to the unpaid taxes and that a contrary interpretation would "discourage changes of ownership and management of financially troubled corporations." *Id.* at 253, 256.

The Oppligers' reliance on *Slodov* is misplaced. *Slodov* considered only the situation in which a change of control occurs within the corporation and a new person takes control "at a time when a tax delinquency for past quarters already exists." *Id.* at 246. As we have already addressed, the Oppligers were responsible persons during each of the quarters in which they failed to pay the employment taxes. Therefore, the Oppligers' decision to pay employees and other creditors in lieu of the United States constituted a willful failure to pay taxes as a matter of law. *See Anuforo v. C.I.R.*, 614 F.3d 799, 806 (8th Cir. 2010) (holding that paying other creditors instead of the United States constitutes willful failure to pay as a matter of law); *see also Olsen v. United States*, 952 F.2d 236, 240 (8th Cir. 1991) ("[I]n the case of individuals who are responsible persons both before and after the withholding tax liability accrues[,] . . . there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation" (internal quotation and citation omitted)).

IV.

We affirm the judgment of the district court.

_____