# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1943

_____

Gary Westerman, also known as G. Westerman

*Plaintiff - Appellant*

v.

United States of America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

_____

Submitted: January 15, 2013
Filed: June 27, 2013

_____

Before RILEY, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

Gary Westerman, as president and owner of WestCorp, Inc., presided over the financial collapse of S&S Office World (S&S), WestCorp's office supply store in Hot Springs, Arkansas. S&S could not compete when Office Depot moved into town. As WestCorp's losses mounted in 2000 and 2001, the company continued to pay employees and creditors, but underpaid the Internal Revenue Service (IRS). Unable to recover from the now defunct WestCorp, the IRS assessed a penalty under

26 U.S.C. (I.R.C.) § 6672 against Westerman, the person responsible for collecting and paying the "trust fund" portion (i.e., the amount withheld from employees' paychecks) of WestCorp's federal employment taxes.

Although Westerman has paid the full $35,824.45 penalty, he accepts responsibility only for $28,955.15 of the unpaid taxes. He pursued an administrative claim, which the IRS denied, and then sued the government for a refund in district court. His dispute with the IRS centers on its treatment of admittedly incomplete payments WestCorp made from 2000 to 2001. To maximize its recovery, the IRS applied those payments first toward WestCorp's *non*-trust fund (i.e., employer matching contribution) taxes rather than dividing the payments proportionally between WestCorp's trust fund and non-trust fund taxes. Westerman argued (1) he did not willfully fail to ensure WestCorp paid the trust fund taxes, and (2) the IRS should have applied the 2000 and 2001 underpayments proportionally to the trust fund and non-trust fund taxes. The district court[1] disagreed and granted summary judgment in favor of the government. Westerman appeals, and we affirm.

## I.    BACKGROUND

### A.    Facts

Until S&S ceased operations in 2002, Westerman was responsible for withholding and paying federal employment taxes for S&S. In the first quarter of 2000, Westerman discovered that WestCorp had run out of cash to pay the IRS, and Westerman skipped his March 2000 tax payment. WestCorp's financial problems continued throughout 2000 and 2001, and the company fell behind in its payments to suppliers and creditors. Although WestCorp continued to pay employees, suppliers, and creditors—sometimes late—the company never caught up on its IRS payments. WestCorp did not fully pay its employment taxes in the first and fourth

---

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

quarters of 2000 or the first, third, and fourth quarters of 2001. During those quarters, WestCorp made only the following five payments:

1. $5,508.14 on February 24, 2000. WestCorp's Form 941 for the first quarter of 2000 listed a monthly tax liability of $5,508.14 for January 2000.

2. $4,704.94 on April 3, 2000. WestCorp's Form 941 for the first quarter of 2000 listed a monthly tax liability of $4,704.94 for February 2000.

3. $5,166.88 on December 11, 2000, which Westerman says was intended to satisfy WestCorp's November 2000 tax liabilities. WestCorp's Form 941 for the fourth quarter of 2000 listed tax liabilities of $5,166.88 for October 2000, and either $4,839.68 or $4,872.29 for November 2000.[2]

4. $5,811.66 on April 19, 2001. WestCorp's Form 941 for the first quarter of 2001 listed a tax liability of $5,811.66 for March 2001.

5. $1,165.95 on December 27, 2001, which approximately equaled WestCorp's total employment tax liability for the month of November 2001. The record does not contain a Form 941 for the fourth quarter of 2001. Westerman avers that a copy of this form is not available from the IRS and neither he nor WestCorp has a copy of that quarter's Form 941. Westerman admits all of WestCorp's records were destroyed approximately a year and a half before he brought this case. The government agrees WestCorp's tax liability for November 2001 was $1,165.92.[3]

_____

[2]The record contains two Forms 941, both signed and dated December 31, 2000, but it is unclear which version was actually filed with the IRS. Neither one was actually filed until March 19, 2002.

[3]Both parties apparently agree WestCorp's December 2001 payment was three cents greater than its November 2001 employment tax liability.

Westerman avers that he and WestCorp intended each of those payments to cover the full employment tax liability—both trust fund and non-trust fund—for particular months within the corresponding quarters.

But when Westerman made these five payments on WestCorp's behalf, he did not specifically instruct the IRS—whether by writing on the check, the payment coupon accompanying the check, or in a contemporaneous letter—to apply the payments in any particular manner. In accordance with its longstanding practice, the IRS applied those payments first toward Westerman's non-trust fund tax obligations for the quarter in which the payments were made. By doing so, the IRS increased its potential tax recovery, because WestCorp's trust fund taxes—unlike its non-trust fund taxes—were recoverable from Westerman personally if he willfully failed to ensure their payment. See I.R.C. § 6672.[4] Westerman admits that after learning the IRS applied WestCorp's payments to the non-trust fund liability—meaning WestCorp's proportional trust fund liabilities for the months at issue were *not* paid—"he authorized payment of obligations of WestCorp, Inc., other than the subject federal employment tax obligations for the quarters at issue."

On March 25, 2004, the IRS assessed a personal penalty of $35,824.45 against Westerman under I.R.C. § 6672. Having allocated WestCorp's payments first to the non-trust fund portion—for which Westerman was not personally liable—the IRS

---

[4]I.R.C. § 6672(a) provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

-4-

held Westerman personally liable under I.R.C. § 6672 for the unpaid trust fund portion of WestCorp's tax liabilities. Westerman paid the assessment in full.

### B.    Procedural History

On January 25, 2008, Westerman filed a timely administrative claim for refund, asserting for the first time that the IRS should have applied the five payments to WestCorp's liability for particular *months* rather than *quarters*. On August 13, 2008, the IRS denied Westerman's refund claim. On March 2, 2009, after Westerman administratively appealed, the IRS Appeals Office sustained the denial of his claim for refund.

On July 19, 2010, Westerman filed a complaint under I.R.C. § 7422 in the Western District of Arkansas, seeking a refund of $7,122.31 (i.e., $2,115.27 for Q1 2000, $3,115.44 for Q4 2000, $852.39 for Q1 2001, and $1,039.21 for Q4 2001). Westerman later reduced his refund request to $6,869.30. Westerman asserted (1) he did not willfully fail to pay WestCorp's trust fund liabilities for the five months WestCorp made payments, and (2) WestCorp's five payments were effectively, though not expressly, designated to pay the employment taxes for the months to which their amounts corresponded. The government moved for summary judgment, which the district court granted. The district court found "Westerman acted willfully when he made payments to creditors without first fulfilling his liability for payroll taxes due and owing to the United States." The district court also found Westerman had "failed to designate" the payments, and "[i]n the absence of a specific designation, the IRS is entitled to apply deposits and payments as it determines them to be in the best interest of the IRS, in order to collect the taxes that will be hardest to recover, even if it results in an increased tax liability." Westerman moved for reconsideration, which the district court denied. Westerman appeals.[5]

_____

[5]We have appellate jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

Although a tax case, this appeal arises from a district court's grant of summary judgment. We review the district court's order under the familiar de novo standard of review applicable to summary judgment in any non-tax case. See, e.g., Colosimo v. United States, 630 F.3d 749, 752 (8th Cir. 2011). Our de novo review leads us to agree with the district court's analysis. First, as a matter of law, the undisputed facts establish that Westerman willfully failed to pay the ratable trust fund portion of WestCorp's five payments because he admittedly paid private creditors rather than the IRS after learning that the trust fund taxes at issue in this case were unpaid. Second, the undisputed facts establish that Westerman failed to designate in writing how the IRS should apply the five payments at issue in this case, and the IRS was well within its statutory and common-law rights to apply the payments in the treasury's best interest.

### A. Willfulness Under I.R.C. § 6672

Although the government's hesitation at oral argument gave us pause, we agree with the district court that the undisputed facts show, as a matter of law, Westerman willfully failed to pay the trust fund taxes at issue in this appeal.

#### 1. Willfulness Standard

Congress requires employers to withhold from their employees' paychecks three federal taxes: income, Social Security, and Medicare. See I.R.C. §§ 3101, 3102(a), 3402(a)(1), 3403. The money thus withheld becomes the "trust fund" portion of federal employment taxes because the employer holds the money in "trust" for the federal government until paying it to the IRS. I.R.C. § 7501; see, e.g., Anuforo v. Comm'r, 614 F.3d 799, 802 n.2 (8th Cir. 2010). By contrast, employment excise taxes—Social Security and Medicare matching contributions—constitute the "non-trust fund" portion of federal employment taxes because the employer pays them directly, never holding them in "trust." See I.R.C. §§ 3111, 7501; see also Diamond Plating Co. v. United States, 390 F.3d 1035, 1038 (7th Cir. 2004). Under

I.R.C. § 6672, the individual responsible for "collect[ing] such tax, or truthfully account[ing] for and pay[ing] over" the trust fund portion of federal employment taxes may be personally liable to the IRS for a "willful[]" underpayment of the trust fund portion. I.R.C. § 6672. Personal liability does not attach to an employer's underpayment of the non-trust fund portion. See id.

Personal liability under I.R.C. § 6672 arises for underpaid trust fund taxes only under two conditions: first, "an individual must be a responsible person" and, second, the individual "must willfully fail to pay over the taxes in question." Ferguson v. United States, 484 F.3d 1068, 1072-73 (8th Cir. 2007). Westerman admits the first prong—he was a responsible person. But he disputes the second prong insofar as WestCorp made some monthly payments. Our court's standard for willfulness in the context of § 6672 is well established:

> A responsible person acts willfully if he acts or fails to act consciously and voluntarily and *with knowledge* or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes, *or* by proceeding with *a reckless disregard* of a known or obvious risk that trust funds may not be remitted to the government.

Keller v. United States, 46 F.3d 851, 854 (8th Cir. 1995) (emphasis added) (internal quotations omitted).

To the extent Westerman, as the responsible person, made five payments from WestCorp to the IRS and reasonably expected those payments to satisfy in full WestCorp's monthly employment tax liability, the IRS cannot hold him personally liable for the ratable non-trust fund portion of those five payments *unless* (1) he received notice that the trust fund liabilities remained unpaid, and (2) he paid other creditors instead of the IRS. See, e.g., Oppliger v. United States, 637 F.3d 889, 893-95 (8th Cir. 2011); cf. Slodov v. United States, 436 U.S. 238, 254 (1978) ("The fact

-7-

that [I.R.C. § 6672] imposes a 'penalty' and is violated only by a 'willful failure' is itself strong evidence that it was not intended to impose liability without personal fault.").

### 2. Undisputed Facts Establish Willfulness

The IRS does not dispute Westerman's claim that *at the time he made the payments* he lacked "knowledge or intent" that WestCorp's payments would not satisfy the trust fund obligations for the months in which he made the payments. But the undisputed facts show that after receiving notice WestCorp's trust fund liabilities remained unpaid, Westerman made payments—totaling far more than WestCorp's unpaid trust  fund liabilities—to suppliers and creditors.  For this reason, Westerman's non-payment was "willful" under I.R.C. § 6672. See, e.g., Elmore v. United States, 843 F.2d 1128, 1132 (8th Cir. 1988) ("The term willfully does not connote a bad or evil motive, but rather means a voluntary, conscious, and intentional act, *such as the payment of other creditors in preference to the United States*." (emphasis added)).[6]

Whether WestCorp simply "didn't have the cash" to pay the IRS at the time the trust fund taxes were due, as Westerman claims, does not matter in this case because Westerman was a "responsible person[] during each of the quarters in which [WestCorp] failed to pay the employment taxes."[7] Oppliger, 637 F.3d at 894. What

---

[6]We note § 6672 may use the term "willful" in a most particularized way. Section 6672's "notion of 'fault' may have little to do with other sections of the Tax Code," Slodov, 436 U.S. at 261 (Rehnquist, J., concurring) (emphasis omitted), much less with other volumes of the United States Code.

[7]For this reason, holding Westerman liable is entirely consistent with the Slodov court's holding "that the responsible person . . . does not violate § 6672 by willfully using employer funds for purposes other than satisfaction of the trust fund tax claims of the United States when *at the time he assumed control* there were no funds with which to satisfy the tax obligation and the funds thereafter generated are

matters here is that while Westerman remained the responsible person, WestCorp later acquired sufficient, unencumbered funds to satisfy the trust fund liability.[8] Under § 6672, "'individuals who are responsible persons both before and after the withholding tax liability accrues[,] . . . [have] a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation.'" Olsen v. United States, 952 F.2d 236, 240 (8th Cir. 1991) (quoting Mazo v. United States, 591 F.2d 1151, 1157 (5th Cir. 1979)); see also Keller, 46 F.3d at 854-55 ("Reckless conduct includes a failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government." (internal quotation omitted)).

Instead of satisfying WestCorp's debt to the government, Westerman used later-acquired funds to pay suppliers, including S.P. Richards, and to make monthly payments to the Arkansas Diamond Bank totaling more than WestCorp's unpaid trust fund liabilities. This "willful[] fail[ure] to pay the trust fund taxes" exposes Westerman to liability under § 6672. Oppliger, 637 F.3d at 893; see also Anuforo, 614 F.3d at 806 (holding a responsible person's "conduct was willful as a matter of law" because he "continued to make payments to other creditors" despite having "knowledge of his outstanding trust-fund employment tax debts").

---

not directly traceable to collected taxes referred to by that statute." Slodov, 436 U.S. at 259-60 (emphasis added). In Slodov, the government sought to hold an individual liable for unpaid trust fund liability incurred by a company *before* he became responsible for ensuring the company's trust fund payments—the newly responsible person in Slodov had *no control* over the company's prior failure to pay the government. See id. at 240-42. In Westerman's case, by contrast, there was no intervening change in WestCorp's control, and Westerman himself made the decision not to pay the IRS.

[8]Westerman has not argued the funds WestCorp acquired after he received notice were encumbered or insufficient to satisfy WestCorp's trust fund liability. Nor could he—WestCorp's subsequent payments to the Arkansas Diamond Bank alone exceeded WestCorp's unpaid IRS trust fund liabilities.

The district court correctly analyzed the undisputed facts under I.R.C. § 6672 and the case law interpreting that section.

### B.    Payment Allocation

We also agree with the district court that the IRS properly allocated the five payments at issue in this appeal.

### 1.    IRS's Right to Allocate Undesignated Payments

When employers make payments toward their quarterly employment tax liabilities, the IRS's longstanding practice—absent directions from the employer—is to apply the payment first toward the employer's non-trust fund liabilities for the quarter and, only once that obligation is fully satisfied, toward the quarter's trust fund liabilities.[9]  The IRS's right to do so springs from a long-established common-law rule: "Where a debtor owes money to his creditor upon several accounts, he may pay part, and apply it to any debt; but . . . where it appears that money is paid indefinitely, the *creditor has election to declare on what account he received it*."  Anonymous, (1724) 88 Eng. Rep. 169 (K.B.) 169; 8 Mod. 236, 236 (emphasis added).  Since the earliest days of the American republic, our courts have followed this rule.  See, e.g., United States v. Kirkpatrick, 22 U.S. 720, 737-38 (1824) (Story, J.) ("The general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments; if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice."); United States v. January, 11

_____

[9]See, e.g., In re Jehan-Das, Inc., 925 F.2d 237, 238 (8th Cir. 1991) ("Typically, the IRS applies involuntary payments to nontrust taxes first."); In re Energy Res. Co., 871 F.2d 223, 227 (1st Cir. 1989); Liddon v. United States, 448 F.2d 509, 513 (5th Cir. 1971); Datlof v. United States, 370 F.2d 655, 657-58 (3d Cir. 1966); IRS Policy Statement P-5-14, reprinted in Internal Revenue Manual (I.R.M.) § 1.2.14.1.3 ("Any payment made on the business account is deemed to represent payment of the nontrust fund portion of the tax liability (e.g., employer's share of FICA) unless designated otherwise by the taxpayer.").

U.S. (7 Cranch) 572, 574-75 (1813) ("The law, with respect to the application of particular payments when the debtor owes distinct debts, has *long since been settled*. . . . If [the debtor] neglects to make the application, the creditor may make it." (emphasis added)). Seeing no reason today to abandon a rule which has stood the test of time, we join our sister circuits in expressly holding the IRS may allocate an undesignated payment among the payer's various tax liabilities as the IRS sees fit.[10] See, e.g., United States v. Schroeder, 900 F.2d 1144, 1149 (7th Cir. 1990).

## 2.      IRS's Allocation of Payments in This Case

Westerman admits he did not affirmatively designate the five payments at issue in this case, but he contends the IRS should nonetheless have applied at least part of those payments toward WestCorp's trust fund obligations. We consider—and, in turn, reject—each of the propositions Westerman advances in support of this contention.

---

[10]Consistent with common-law principles, we previously held "the IRS was entitled to apply [undesignated] payments to the [taxpayer's] *oldest debts first*." Emshwiller v. United States, 565 F.2d 1042, 1046 (8th Cir. 1977) (emphasis added). If neither debtor nor creditor designated a payment, common-law courts would "place it to pay off the *old debt first*." Dawe v. Holdsworth, (1791) 170 Eng. Rep. 89 (N.P.) 90; Peake 89, 91 (emphasis added). But common-law courts would make this allocation only if the creditor failed to apply the undesignated payment "at any time before [legal] action." Mills v. Fowkes, (1839) 132 Eng. Rep. 1174 (Ct. Com. Pl.) 1177; 5 Bing. N.C. 455, 462; see also Alexandria v. Patten, 8 U.S. 317, 320 (1808) (Marshall, C.J.) ("No principle is recollected which obliges the creditor to make th[e] election immediately."). Having allocated WestCorp's undesignated payments upon receipt, the IRS in this case is not required to apply the payments to WestCorp's "oldest debts first," Emshwiller, 565 F.2d at 1046.

### a.    Implied Designation

First, Westerman maintains WestCorp *implicitly* designated the five payments at issue because the timing and amount of each payment revealed its connection to a specific month's combined trust fund and non-trust fund liability.  This proposition fails because Westerman did not include information with each payment sufficient to require the IRS to match the payment to a particular unpaid liability.  Each time Westerman made a payment, he deposited a check—which likely would never reach the IRS—along with a coupon, which would reach the IRS.  Westerman admits that neither the checks[11] nor the coupons designated anything other than the quarter to which the payments should apply.[12]  Furthermore, Westerman attached no additional information to the coupon, he contemporaneously gave the IRS no separate designation instruction, and he never submitted a prospective designation.

The only decision Westerman finds to support his proposition is a "line of thought" in a bankruptcy case from the Middle District of Florida, In re Ledin, 179 B.R. 721 (Bankr. M.D. Fla. 1995), which neither binds nor persuades us.  To accept the logic Westerman ascribes to Ledin would require us to reject our sister circuits' reasoning, see, e.g., Schroeder, 900 F.2d at 1149, and the common-law rule which gives creditors "the election" to allocate undesignated payments, Goddard v. Cox, (1742) 93 Eng. Rep. 1122 (K.B.) 1123; 2 Str. 1194, 1194-95.  But we are not convinced Westerman interprets Ledin correctly.  The Ledin court only addressed the IRS's ability to allocate deposits between *quarters*, not whether the IRS could allocate deposits among *months* within a quarter.  See Ledin, 179 B.R. at 725.  The IRS properly applied WestCorp's payments to the *quarter* listed on the payment

---

[11]Even if the checks contained a notation, that notation could not reasonably designate the payment because the IRS likely would never receive the notation.  See, e.g., Wood v. United States, 808 F.2d 411, 416-17 (5th Cir. 1987).

[12]In accordance with the quarter designation on the coupons, the IRS applied the payments toward the unpaid liabilities for the quarter designated on the coupon.

coupon, and Westerman never directed the IRS to apply the payments to any particular *month*.

To be sure, WestCorp's Forms 941 for the quarters at issue listed WestCorp's monthly employment tax liabilities and at least four of the five payments corresponded precisely to a particular month's liability listed on one of the forms.[13] But the IRS ordinarily requires Forms 941 to be submitted separately from—and later than—monthly tax deposits. See 26 C.F.R. §§ 31.3102–2, .3111–3, .6011(a)–1(a)(1), .6011(a)–1(e), .6071(a)–1(a)(1), .6302–1(a)-(b)(2), .6302–1(c)(1) (2001); see also Dep't of the Treasury, IRS, Instructions for Form 941, at 1 (Jan. 2001). Westerman cannot reasonably expect the IRS to match a particular payment to a line on a form submitted separately and, for all but one of the months at issue, *after* the payment.[14]

This is not a case where an IRS employee opened a single envelope containing both a form and a check and thus could easily match the check with a particular tax liability. Quite the contrary, IRS employees processing employment tax deposits typically have no access to the relevant Form 941 because employers do not file the form concurrently with their deposits. See, e.g., Dep't of the Treasury, IRS, Employer's Tax Guide (Circular E), Pub. 15, at 25-26 (2013). Even if an employer submits a late payment after filing the form, it would place an unreasonable burden on the IRS to require its employees to match a payment to a single *line*—rather than the total liability—listed on one of the many separate forms employers must file. As the Court of Federal Claims, a tribunal with significant expertise in adjudicating tax

---

[13] As previously noted, the record does not contain WestCorp's Form 941 for the fourth quarter of 2001.

[14] The record shows Westerman deposited one payment—late—after filing the Form 941 for the corresponding quarter. By contrast, Westerman did not file the Form 941 for the fourth quarter of 2000 until March 19, 2002—more than two years after it was due.

cases, explained, "[r]equiring the IRS to match an exact payment amount, without proper designation, to one of multiple different possible tax totals owed, would be unreasonable and would force the IRS to guess regarding which of numerous tax liabilities it thinks a taxpayer might wish to pay off first." White v. United States, 43 Fed. Cl. 474, 480 (1999). The White court's analysis is particularly applicable here because Westerman first informed the IRS he wanted the payments applied—retroactively—to particular months more than six years after WestCorp made the last payment at issue.

### b.     Statute

Second, Westerman proposes I.R.C. §§ 6672 and 7501 "limit[] the IRS's ability to apply" federal tax deposits the way the IRS did in his case. Plain language dooms Westerman's argument: neither section says anything about the IRS's ability to allocate employment tax payments.[15]

Because "the language of the act is explicit, there is great danger in" doing what Westerman would have us do, that is, "departing from the words used." Denn v. Reid, 35 U.S. 524, 527 (1836). Yet Westerman asks us, based on a mismatch of concepts harvested from the legal forests of trust and tax law, to read these sections in a manner at odds with (1) the plain language of the sections; (2) the IRS's consistent and sensible interpretation of the sections; and (3) the common-law rule underlying the IRS's right to allocate undesignated payments. "This we will not do."

---

[15]For the text of I.R.C. § 6672(a), see supra note 4. I.R.C. § 7501(a) provides:

Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose.

-14-

Barnhart v. Sigmon Coal Co., 534 U.S. 438, 454 (2002). We "find no reason to read into the plain language of the statute[s] an implicit" requirement that the IRS allocate WestCorp's payments in a way that minimizes Westerman's § 6672 liability. Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 529 (2007).

### c.　Equity

Third, relying on a strained reading of a tax court case, Woods v. Comm'r, 92 T.C. 776, 784 (1989), Westerman proposes it is "inequitable" to allocate payments in a manner which increases the IRS's ability to collect unpaid taxes. The three paragraphs Westerman devotes to this proposition misconstrue equitable principles. Equity does not, as Westerman suggests, give courts power to make policy decisions deemed "fair" in the eyes of Article III judges. See, e.g., Lonchar v. Thomas, 517 U.S. 314, 323 (1996) ("'There is no such thing in the Law, as Writs of Grace and Favour issuing from the Judges.'" (quoting Opinion on the Writ of Habeas Corpus, (1758) 97 Eng. Rep. 29 (H.L.) 36; Wilm. 77, 87 (Wilmot, J.))). Long gone are the "roguish" days when equity varied like the size of the "chancellor's foot," John Selden, The Table Talk of John Selden 61 (Samuel H. Reynolds ed., Oxford, Clarendon Press 1892) (1689). See Lonchar, 517 U.S. at 323 ("'[C]ourts of equity must be governed by rules and precedents no less than the courts of law.'" (quoting Missouri v. Jenkins, 515 U.S. 70, 127 (1995) (Thomas, J., concurring))). To obtain equitable relief, Westerman must point to an established equitable principle. Simply accusing the IRS of acting "inequitabl[y]" is not nearly enough.

Westerman ignores one of the most fundamental principles of equity: *equitas sequiter legem* (i.e., equity follows the law). See Magniac v. Thomson, 56 U.S. (15 How.) 281, 299 (1853). Well over a century has passed since American jurisprudence definitively established that "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." Hedges v. Dixon Cnty., 150 U.S. 182, 192 (1893). The statutory scheme Congress created in §§ 6672 and 7501 plainly—and reasonably—permits the IRS to maximize the treasury's

-15-

collection of unpaid liabilities by applying undesignated employment tax payments first toward non-trust fund taxes and then by recovering unpaid trust fund taxes from the person (Westerman) responsible for their underpayment. See I.R.C. §§ 6672, 7501. Because the IRS's rights in this case are "clearly defined and established by law, equity has no power to change or unsettle those rights," Magniac, 56 U.S. (15 How.) at 299.

The district court correctly found proper the IRS's allocation of the five WestCorp payments at issue in this case.

## III.    CONCLUSION

We affirm the district court's judgment.

_____